Michael Perrinte, Deputy Federal Public Defender, on behalf of Petitioner Candace Fox. In 1984, when Ms. Fox pled guilty, the state promised that as part of her plea bargain, she would be entitled to release on parole with good behavior after seven and a half years. I'm having some difficulty in this record figuring out what... There was a promise. Everybody agrees there was a promise of some sort. But wasn't it seven and a half years parole eligibility? I read the colloquy, and the judge said, and Ms. Fox agreed, that I can't tell you when you're going to get out, but I can tell you you'll be eligible for parole in seven and a half years. So was it a release promise or a seven and a half year parole eligibility promise? I'm not sure it makes a difference, but I want to be clear on what it was. Well, on the face of the record, I think that the answer is that's ambiguous, but that it should be interpreted to be read as a release on parole. How can we read it as a release one when, again, the colloquy couldn't be clearer? The judge says, and Ms. Fox says, I understand that, you know, you'll be eligible for all seven and a half years. I'll put it in the minutes. I'll tell the authorities. But you understand it's up to them, not to me, when you get out. And she says, I understand. Well, the prosecutor also told her that it was, in effect, up to her, that the key was in her pocket, because if she behaved good behavior for seven and a half years, she would be able to be entitled to release. So it was up to her to do that, which she did do. But I think also just looking at what the prosecutor said to Ms. Fox relative to what was said to the petitioner in Brown v. Pool, that here there's a clear indication that this would mean release on parole, because in Brown v. Pool, the prosecutor specifically referred to a good time, half-time credit. Well, let's put that aside for a second, because I have some difficulty finding a promise of release. Here's my biggest problem with your case. I'd like you to address it. Your client brings a petition for state habeas, state post-conviction relief, where your client seeks post-conviction relief. And eventually the court says, yeah, you're right. I thought you were going to be eligible for parole after seven. Well, two things happen. She says, first, nobody told me there was a probation tail, a lifetime probation tail on this. And the court says, well, then I'll vacate the plea. And they do it at your client's request. What relief can we give because your client actually sought to vacate the plea agreement? First, that rescission was infected by the state's breach. So this is fundamentally a Santabello claim, a breach of the plea agreement claim. Well, but the plea agreement, you went to court and you said there's been a breach of the plea agreement. And the court said on slightly different grounds, well, we'll throw it out then. There's no plea agreement. Go back and do what you will. Doesn't that distinguish this from all the cases in which we're being asked to enforce the plea agreement? You didn't go to court and say, I want to be able to plead guilty to second-degree murder. I'll live with a lifetime tail, which is mandatory. You said throw it out. And the court did. Well, in 1986, it's not as though the breach was litigated at that time. The parties were not litigating the breach in 1986. Well, sure they were. You claimed that the opinion says she makes two claims, seven and a half years. And then it mistakenly says she got the seven and a half years. And also that there was a lifetime probation tail she didn't know about. She wouldn't have pleaded guilty had she known about it. And the court says, okay, I believe you. We'll start all over again. So that's my fundamental difficulty with this case. Your client went to court and vacated the plea. And now you want us to reinstate a plea that she sought to vacate. So tell me how we do that. I think the thing that needs clarification, I think you're referring to the court of appeal opinion. Right. And, yes, she had alleged the breach at that point. And at the rescission hearing in 1989, however, she was responding to the fact she was rejecting the state's representation of what her deal was. Sure. So she was saying, I don't want to – you're telling me that I have a straight 15 July for the minimum eligible parole of 10 years. I thought I had a seven and a half year deal. I don't want this new deal that you're representing. I also don't want the tail of parole. It's very clear. I don't want that. I wouldn't have pleaded guilty had I known about that, she says. That's not very clear. It's a conjunction. She says in her declaration that she would not have pled guilty in this case if I had known I might not be released from prison in seven and one-half years and that I would be on parole for the rest of my life. Well, I guess let me take you just a little bit different approach. So I appreciate what my colleague is asking because I think that's pretty important. But even if we go with your approach, it seemed to me that what you're suggesting is that there really wasn't a time where she argued breach of the plea until she had already given up what she had. In other words, she went in and said, well, guess what? I don't know what I'm doing. If that's what it was, I didn't understand it. She did not say there was a plea agreement that said it. She said I didn't know that I even had that. If I had known that, I wouldn't have done it. So it wasn't knowing and it wasn't voluntary. And at that point, she decided to go to trial. Rather than she didn't ask to enforce the plea, she didn't ask any of that. She just said at this point, all I want to do is go to trial. Seems to me she then passes the opportunity. The plea is gone when she does that. Your Honor, the notion that she wanted to go to trial is directly contradicted in this record. Two times before trial. Well, it isn't a matter of whether she wanted to go to trial. She was arguing, hey, I didn't know what I was doing. And because she didn't know what she was doing, the court had no alternative. You can either go to trial or you can go to trial. There was nothing in this record which would suggest she was at that point saying, well, you've got in state seven and a half years. It's true that she was in a sense given no alternative. It was unfair in that she was either forced to go to trial or to accept the state's instruction. Because her argument was not that there was a breach. Her argument was, I didn't know, and because I didn't know, I don't like it. And so, therefore, she was said, well, you can either deal with it, because that's all we can do, or you can get a new trial. But she took the new trial and then we went on our way. We concede that her habeas attorney at the time of this rescission hearing did not make the argument that he should have made on her behalf and that that was ineffective assistance of habeas counsel. But that's not even in front of us. Think about it in contract terms. Judge Smith has done it better than I did. So think about it in contract terms. You're asking us to enforce a plea agreement, which is a contract. Some number of years ago, your client went to court and said there was no meeting of the minds on this contract, because I didn't enter into it knowingly. I didn't know I was going to get a lifetime tail of probation. And the court said, my God, you're right. I can't hold you to this contract, because it has other provisions that you don't like, too. So I'll let you out of it. And your client got out of the contract. Now you're asking us to enforce the contract that your client asked to get out of. And that's, I mean, we've wandered around it, but that's the heart of my difficulty with your case. So address that, and don't worry about the clock. We'll give you extra time to respond at home. This is not, it's clear what was in Fox's mind when she pled guilty. Only the state has tried to allege that this is a meeting of the minds case, where this is just a mistake the parties didn't know. But just to make, you can't really argue that, because your first argument to us was there was no breach of plea argument made at that time. That's what you said to my client, to my colleague. That's why I said, well, let's go at it a different way. I'm not trying, I just want to know what your argument is. Either she made that argument or she didn't. It's my understanding she didn't make it. And if she didn't make it, then there's nothing, there's no agreement left. She gave up that agreement. She said, I didn't understand it, and there wasn't an agreement. Ms. Fox could not knowingly and voluntarily give up the rights that were protected by her plea agreement without, when the state was misrepresenting what that agreement was. She could not give up a seven-and-a-half-year deal when the state's telling her, you have no such deal. Because her argument was, I didn't know it wasn't an agreement. There was nothing there. You can't say it was that. And so, therefore, you can't make me abide by it. And, therefore, I'm going to trial. That's what she agreed to do. She never agreed to go to trial in lieu of the seven-and-a-half-year deal. She always wanted the seven-and-a-half-year deal. She was never given a choice. Could the state court have given her that? Now I'm delving into California law, which always makes me uneasy. But as I read it, she said to the judge, here's what I want you to do. I want you to enforce the agreement I understood I signed, which is the sentence, I got out after seven-and-a-half years and I don't have a probation tail. Wouldn't the judge have said, that's not a sentence I can legally impose? There is no such sentence under California law. You can't plead guilty to second-degree murder, be promised that you got out after seven-and-a-half years and not have a probation tail. So all I can do for you is vacate the plea. No, because the trial court would still be bound by the Supreme Court decision in Sanabella. The prosecutor made that promise. Sanabella doesn't say that we enforce, that state courts are required to enforce illegal agreements. It says that people aren't bound to them. There may be other consequences, North Carolina and Pierce consequences, but those are not in front of us. But could the state judge have said at that time, okay, contrary to all California law, I'll give you the sentence you thought you pled to. That was absolutely, this trial court was bound to give her that sentence. Tell me under what, I've read a dozen California cases that say when an illegal sentence is given, all the judge can do is vacate it and go back and start over again. Tell me what California... I've got a couple of cases which are Ninth Circuit cases which might say that. One written by my esteemed colleague right to the... And why I'm having trouble... ...find any California cases. So his question is very important. Could the state judge have done that? Well, I don't think she should have had to go to the state judge in the first place. I mean, she's there because the state's telling her you have a ten-year deal. But to say that the state court could have done nothing but give her a ten-year deal after the prosecutor said it was seven-and-a-half, that's blatantly incorrect. See, and the reason I'm having difficulty is the cases that Judge Smith is talking about are ones where nobody set aside the plea agreement beforehand. They just came to us and said, we have this agreement, we've been trying to get the state to live up to it, and federal court, will you enforce it? Judge Reinhart said, a deal's a deal. Even the Court of Appeal on this case from the 1994 opinion did not treat this as an illegal deal at all. No, it didn't have to, because one of your arguments, and that's why we keep asking you about it, you made alternative arguments. A, this is, I was promised seven-and-a-half years, and B, I never would have signed this had anybody told me about lifetime parole. And the Court of Appeal, its opinion, it makes a mistake in terms of what your client got, but says, well, you're right. If you didn't know about lifetime parole, we can't hold you to this deal. And your client didn't say, no, no, I want to keep the deal. Your client then said, fine, we have a vacated. Well, she didn't just say, fine, I want to keep the deal. She always wanted the seven-and-a-half-year deal. That's repeated in all of her plea agreements. Did she appeal the Court of Appeals decision? Yes, after the Court of Appeals decision, which is after her trial, where she's... Right, no, I mean the eventual one that says, That is... We're undoing the deal. Yes, that is... Appealed it to the California Supreme Court? Yes. And that day denied review? Yes, well, there's the California... The only time that this was before the California Supreme Court as a claim like we have now was on the petition for review after the trial from the Court of Appeals, and then on the habeas petition. The habeas petition was denied on procedural grounds. Yeah, and I'm willing to look through back to the Court of Appeals decision and they're not asserting a procedural bar, as I understand it. Well, the fact that they're not asserting procedural bars means that this should be de novo review. There should be no deferences in the Court of Appeals. Well, why? Why is that? If there is no procedural bar, then we look through back to the last reasoned decision. You can't have it both ways, can you? Can you have... Either there's a procedural bar and you're in trouble because of that, or there's no procedural bar and we look back through to the last reasoned decision. Those cases deal with... When you defeat the procedural bar in this Court, then we can go back. But when the State's saying, there's no procedural bar, we're not asserting it, how do we then ignore the last reasoned decision? Well, it would be in the same way that you'd ignore the procedural bar if the California Supreme Court addressed the merits. Are you suggesting... Are you really suggesting that, because the State didn't argue it, that therefore I need not look at the last reasoned decision? It's not... I mean, I don't find any law that gets around looking at the last reasoned decision. The last reasoned decision is the California Supreme Court's denial of her petition on habeas review as untimely. That's the decision that you look to. You see that it's a procedural bar, the State has waived that defense by never having raised it below or in this Court, and this Court's review is de novo because the California Supreme Court never adopted or incorporated into its opinion the findings of the lower intermediate State courts. So there's no reason for this Court to adopt findings that were never adopted by the California Supreme Court. Why are you better off if they don't assert the procedural bar than if they do? If they had asserted the procedural bar,  you'd have to show cause and prejudice. They've done you a favor. They say, we're not going to require you to do that. Now you're saying the result of that favor is that we don't give any deference to any of the State court opinions? I think it's a strategic withholding on their part because the claims on which they had asserted the procedural bar, the district court found that she did meet cause and prejudice and then reviewed those claims de novo. And so in order to avoid... The side trying to have it both ways is the State because they want to have review under 254D, but then if not that, maybe have a procedural bar imposed by the court. We only want to have the last reason decision. And if we have to get around that bar, we can. We did it in district court, but then we shouldn't have to because they've never raised it. Even if we reviewed de novo, let's just get past all the EDPA issues. Still, I'll give you one more time now. I'm thinking you'll probably get another chance later. Tell me how I get past the fact that your client asked to have the plea agreement vacated. Because the State had obligations as well and they didn't meet them during that rescission hearing. The rescission of her agreement was rendered involuntary by the State's brief. But what the State said... I read their briefs. The State said, you know, we didn't tell her she'd get out after 7 1⁄2 years, but everybody agrees there was a representation that she'd be eligible for parole in 7 1⁄2 years. And we were wrong. That was a mistake. We shouldn't have said that. We can't do that, Judge. And the Judge knew that. The trial Judge knew that. And so did the Court of Appeal. The State didn't say, oh, no, we never told her that. That's why I issued the dispute at the beginning, would I get out? But the State did not even stand by its own interpretation of the agreement. Well, it couldn't, because that's an agreement that under California law, at least, the Judge couldn't order enforced, right? It was bound to stand by that agreement. So it should have said, Judge, we want you to enter an order that does whatever you say it should say. And if the Judge said, I have California cases that say I can't do that, I'm happy to vacate the plea agreement if you want, what would your client have said? She would not have vacated a 7 1⁄2-year deal. Oh, no, that's not what I'm asking. The Judge had said, I can't do that. I'm sorry. I can't do that. Would you have told the Judge he was wrong? Under the Constitution, you were entitled to that? Yes. If she had had that opportunity, she would have told the Judge that this is a violation of Sanabella, because all Sanabella says is that the defendant is subject to the plea, is due what is reasonably due. Okay, so let's assume that we think the agreement, as the Judge spelled it out very carefully to your client during the colloquy, was that she would be eligible for parole in 7 1⁄2 years. Is that the agreement you want us to enforce? I want you to enforce the release on parole in 7 1⁄2 years, but... Well, no, you don't... Finish your sentence. But what? So... But if the agreement is construed as being not that she will be released, but that she will be eligible for parole... Thank you. ...then what? Then I think under the circumstances of this case, the court should still order her release only because it would be prejudicial to send her back to the parole board when she's now for 30 years. Well, we don't have any sense that the parole board ever would have let her go, and that's the deal that I read here. The deal that I read was the State said you'd be eligible for parole in 7 1⁄2 years. Plead guilty, you'll be... And so my question is, if we rule in your favor, should we order that your client get the original deal, which is eligible for parole in 7 1⁄2 years, second-degree murder, and a lifetime jail probation? I think she should get the original deal. That's what I think the original deal is. That's what I think this record shows the original deal is. Should we enforce that original... Do you want us to... Now, the same question I guess you got asked in the Court of Appeals. Do you want this deal back? You didn't want it back when you were in the California court. Do you want it back now? She is asking for her original deal. However construed, she's asking for the original deal. Okay. Can I ask you another question? Let's assume that she, for whatever reason, decided to withdraw the deal, or withdraw the plea based on whatever at that point, but that then, before anything else happened,  and said to the court, no, I've changed my mind. I don't want to withdraw the plea. I don't want to go to trial because nobody in his right mind would go to trial rather than have the deal she had, whichever way you construe it. And she said to the judge, no, I really didn't know what I was doing. I want to withdraw the plea. I don't want to go to trial. Is there anything that the court was obligated to do at that point? If I understand your question, so I'm not sure I understand the change your mind part. Well, she did, as I understand it, she withdrew the original agreement, and the judge said, okay, you don't want, they didn't tell you enough about the deal. They didn't tell you about the lifetime parole. So you can withdraw your plea if you want. And she said, okay, that's what I'm going to do. Then she came back to the judge and said, you know, this doesn't make any sense. No one in his right mind is going to withdraw that plea agreement. I'd like to change my mind before there's a trial. Is that what happened? Yes. Did that happen? I can't find it in the record. After the smoke cleared in the California courts and your client's plea was now withdrawn, did the state, the record doesn't show it, I don't think, but I may be wrong. Did the state offer to reinstate the original deal? She was never offered the. . . No, I know. She was never offered the deal she thought she had. Did she request that she be allowed to change her mind? She maintained that she would want to go back to the. . . The original deal as she understood it. Yes. Okay. It was in the motion on November 26, 1990, which was a motion to exclude her testimony against the other codependent, a motion for specific performance of her plea agreement. The court denied the motion for specific performance, saying she's already backed out of the deal, but the court did allow her to have her testimony excluded. Yes. And my question was slightly different, which was that I know she was seeking to enforce the deal that she thought she had, which was that I'll get out after seven and a half years. Was there an offer to go back to the deal as I think the state judge construed it, which was that you'd be eligible, but that it was going to be up to the parole board? She turned down that offer, I take it. Yes. I mean, it's ambiguous whether that was offered because the only evidence of that comes from the hearing in 1999, and it's unclear whether . . . Yeah, as I read that hearing, that's why I asked. The state said, look, if she wants to go back to, you know, what we think the original deal was, and now she's ten years out so the seven and a half years really don't matter, we'll do that, but we're not going to agree to release because we don't think we promised that. I also . . . Is that right? Yes. And then your client said, well, if that's the deal, I don't want it, I'll go to trial. I think it's also relevant that, yes, I think it's also relevant that at that time the state had no incentive to bargain with her. She had already testified against her co-defendants. She had essentially lost all . . . she could not be brought back. Right, but they did offer her, in effect, to reinstate what they thought the original deal was, with the exception that it would be eligible for parole at ten years rather than seven and a half. Like I said, it's ambiguous, as you also noted, from the state court record, from the evidentiary hearing, but I believe that that . . . from what we have from the evidentiary hearings, that that was stated, so . . . I don't have any formal offer in the record. Yeah, and that's . . . I couldn't find one. That's why I asked. She asked for specific performance instead of withdrawal of the plea. She asked for specific performance. After the plea was withdrawn. After the plea was already gone. Yeah, and that's why I'm focusing on what she was asking for specific performance of. There's . . . I agree. That's why the question is important, because it doesn't seem to me she was asking for specific performance of what the judge said the plea was, but what she wanted it to be. So specific, yes. The specific performance that she was asking for has always been the seven and a half years, and that's very . . . Out, period. Release, yes. As I said, if you were to construe it differently, she wants her original deal. But that's important, because I want to ask the state if they oppose that. Okay, thanks. Oh, if there are no further questions, I'll . . . Good morning. May it please the court. David Wildman, Deputy Attorney General for the respondent. In this case, the California Court of Appeal in 1994 reasonably applied Santabello and Mabry, which are the Supreme Court cases which are controlling on this case. What we have here is a case which involves a petitioner who voluntarily chose to ask the courts to rescind her plea. She went to before the state courts and said that her plea was not voluntary and intelligent, and under Boykin v. Alabama and in the state case of Imre Tall, the state courts decided to agree with the petitioner and withdrew her plea, gave her exactly what she requested, and she requested that before several different courts in several different ways. And at that point, there was no longer a plea agreement on the table to enforce. So when you went back after that point, this is where we left off with your colleague, and just tell me what's in the record. Does the record indicate that the state offered to honor its original promise to the extent that it was legal? In other words, this is a case where the state concedes it made a promise to the defendant, and it said nobody doubts that the promise was you'll be eligible for parole in seven and a half years. The judge says so at the colloquy hearing, and the prosecutor says so. That's right, Judge, and the judge says, okay, I'll put it in the minutes. And that was a promise you couldn't keep because I take it under California law it would be 10 years before she was eligible for parole. Are we together so far? I'm following you. Okay, you're following me. Do you agree with me? Yes. Okay. Following is different than agreeing. I think we got to agree. Okay, so you have an agreement, and when she goes to jail, she finds out the agreement is not, you know, put aside what she thinks it is, but she's not going to be eligible for parole in seven and a half years. It will be 10. And so she comes back and says, that's not the agreement I thought I entered into. It's not the agreement that's on the record, and she eventually has it set aside. My question is, at that point, do you go back and say, look, we'll do the best we can for you. We'll give you the same plea, the same term. You're now 10 years into it, so the seven and a half years really don't make a difference anymore. We can't do anything about the tail because it's required by law. Is that Elford in the record? I know she seeks to enforce, and your opposition papers say no. We don't object to her pleading again, but we can't give her that deal. That suggests to me you offered the same deal again, but is that anywhere in the record? I don't remember seeing that in the record, Your Honor. There may have been plea negotiations that are not on the record. That's very common. It's a verbal, and it would be part of the trial record. But I don't have a recollection of reading through this record and seeing the exact same plea deal being offered after the plea agreement. Shouldn't you be required at least to offer that deal again? I don't know under Pierce. But she said specific performance, and her idea may be different from yours, may be different from the judge's. But did anyone say, look, you're wrong on what the specific performance is. You don't get out automatically. You just get to have seven and a half years. But if we can't do that, we can give you the ten years. You're almost there. Did anybody explain this to her, what she could get with specific performance, and whether anyone was agreeable to doing it? I'm not sure the record talks about what was discussed at that point. I know the proceedings went to trial, and the trial turned out, other than Petitioner had hoped. We're not dealing with the trial right now. No, it's a plea trial. When she wants specific performance. This is the motion which was argued to the court, and the court made a decision on November 26, 1990. It's the combination motion and limiting motion to enforce. Here's what we're focusing on. Let me give you the context. If at that point, to me, it would be very significant if the state said, no, we can't let you out, but we can give you the whole deal, that you signed up for the first time with the proviso that there will be probation and you won't be eligible for parole until ten years, and she said, that's not the deal I want. I want to go to trial. That would be pretty compelling from your side of the case. On the other hand, the state refused to offer her as good as it could do the second time through. That might be a harmful fact. So that's why we're looking for it. And you tell us the record just doesn't. I don't believe the record addresses that. And certainly the 1994 California Court of Appeal didn't address that in there. And it's never been raised by the other side as a specific argument. We're just trying to find out what the facts are. Certainly. Petitioner did ask to have her plea withdrawn, and one of the things she said is she thought she could win a trial, she thought she wasn't guilty, and that she thought she had an argument on self-defense. I'm not sure where she could have an argument on self-defense. That's one of the things she said. But she did get some testimony excluded in the motion in limine, so she may have thought she had a reasonable chance. Well, the testimony she had excluded was her testimony against the other. Yeah, I know, but it implicated her, I think. It did. But go ahead. The difficulty with this case, and this is why it's so troublesome, is that I don't blame the state other than the misrepresentation at the beginning. It seems like both sides ought to be able to put this woman back to the original deal. And I think when you read the colloquy, the original deal is not release after seven and a half years, it's eligibility for parole. We're way past seven and a half years, so the time period doesn't matter. I'm not sure there's a legal way to do it, but I guess my question is why can't you guys work this out? Certainly, the seven and a half year release argument simply doesn't have weight when you look at the plea colloquy. No, the colloquy couldn't be clearer. I'm not sure it couldn't be clearer. Well, he says, remember, I can't tell you when you're going to get out. That's not at the same time. That was earlier than that. No, I meant the original plea clause. I mean, as you listen to what Judge Hurwitz is putting to you, you think this is one case where you could mediate with Ms. Fox and put together, say, you can have your original deal back, that you could have gotten out at seven and a half years, and then all she's got left is to go to the parole board and get out? Before you answer, let me modify it. Of course, I'll do what Judge Smith usually does. We're not asking you to commit yourself or commit to anything. But this does, I would think anybody would say, it doesn't seem like real justice, like real fairness. As a woman who would have been eligible for parole in seven and a half years, how long has she been there now? Thirty years. This was a 1984 original plea. Thirty years because there was confusion created at least in significant part by the state because they didn't tell her what she was getting. Forget the seven and a half years. I mean, the state is partly responsible, and the court found that. I would heartily say that she's not an innocent person. She didn't handle any of this well. What she knew about this or why, we can't go into here. What it was about her lawyer that allowed her when she was just about up to the time when she was eligible for parole to say, forget it all, I want to go to trial and get convicted with a sentence for the life without parole. There's a certain amount of apparent injustice in this case. She was the one who did cooperate with the state. One of the other women got out fairly soon. She was not the primary culprit here, and she was on her way to getting out, and she'd cooperated with the state unlike the others. The question, instead of Judge Smith, do you think you could agree to settle this, is don't you think that this is a kind of a case that's worth exploring at mediation? It doesn't mean that you're going to have to agree to anything, but we do try to send some cases to mediation where it seems like it's worth the parties talking to each other directly, not necessarily about just their legal obligations, but what seems to be the best solution to a problem that nobody can feel totally comfortable with. Certainly, Your Honor, I understand your concerns with this case and with the original plea agreement that was discussed 30 years ago. However, as far as equity goes, Petitioner played a major role in this violent, callous murder of Mr. Levy. She broke a beer bottle on his head while her friend was stabbing him. That was all true when he said, look, we're going to either – you're looking at seven and a half years, whatever that meant. I don't find it as clear as Judge Hurwitz does, but at least we're going to really look at parole in seven and a half years. So all the things you say about her role are true, but despite that, you made a deal with her to be a cooperating witness and to take a look at seven and a half years. Well, let's assume that you couldn't enforce that, but that's what the state was willing to do. So it's not as if we're just saying, here's somebody who went to trial. We were determined to get first degree against her. The state was determined at the very beginning that, okay, you're going to be a cooperating witness. We're going to treat you like one. We're going to give you a good deal. You know, you're looking at seven and a half years, whatever that is. And all of the questions that I understand Judge Smith to be asking you is, isn't this something that you would be willing to discuss in mediation? You can go to mediation and say, look, this is a horrible woman. We're sorry we didn't execute her. You can say whatever you want once you get there. Well, I mean, I think the short question is, is this a case in which you and the other side could usefully talk to each other? If you can't, then we're bound to decide it, and we'll decide it. And so I don't think you need to answer us this minute. It's because you didn't come to court today thinking about that. But it does strike me as a – your position throughout, as I read the state's position, was, look, we're willing to stick by the original deal. We just can't get you out after seven and a half years. And, you know, Judge Reinhart and I read the plea – the thing differently, but I see – I have here the – I have the transcript in front of me, and the judge says, you understand it's indeterminate. We make no promises or representations about what the Board of Prisons will or will not do when they release you. This is – there is a lifetime top. Do you understand that? And she says yes. It's a different part. Yeah. I'm looking at the sentence. Yeah, but I'm looking at the – at the plea. I'm looking at the sentence. But in any event, let's put all that aside. If – I've always understood the state's position in this case to be, look, we tried our best to adhere to the original deal, but we made a mistake. The other side says I want the original deal. I think the other side's characterization of the original deal is wrong. So the question is, is there some basis for you to talk? If there isn't, then we ought to stop asking you about that, and you ought to complete your argument, and we'll decide the case. Why don't you complete your argument, and we can work it out. Yeah. Right. So you ought to complete your argument. We've used up some of your time, so you ought to use up some of ours. Frankly, from my point of view, I give – I cede my, if you will, speaking ability to Judge Reiner. I think he put it as I was trying to put it, and he did it very masterfully, and that was the only question I was trying to ask. And it has all to do with what could the state do if it wanted to do. That's all I'm trying to do. And I'm just trying to – and he put it a lot better than I did. Well, Judge is a very modest fellow, you will discover. He's just – Modest fellow is my dog. He is a country boy. Well, we may have to decide the case, so please go – I mean, I know we've been taking you off track. It seems to me that what you're saying is the plea was gone, so if the plea's gone, you can't go back on it. I guess my best idea is what's your best argument that I shouldn't go for the procedural default that you don't want to argue in the Supreme Court in 2004 rather than your 1994 decision in front of the Court of Appeals? Certainly. We took a lot of care in the district court which claims to argue for procedural default and which claims not to. And this issue is decided by the California Supreme Court in Ilst and in Green v. Fisher. And in both those cases, the Supreme Court said a later procedural decision doesn't remove an earlier merits decision. The later procedural ruling does not nullify the earlier merits decision. And in Ilst, the court talked about the fact that a petitioner has an opportunity in state court to exhaust his claim or her claim, as it may be in this case. And once that claim is exhausted through the direct appeal process, they're not required to bring it again on habeas corpus. And if there's a timeliness bar many years later, as in here, that doesn't affect the fact that the merits claim was exhausted in 1994 and was thoroughly vetted by the state courts. The 2003 California Supreme Court decision on Robbins was timeliness. It's very clear that applied to all the new claims that weren't brought nine years earlier during the direct appeal. But for an issue that had already been brought nine years earlier, the timeliness bar doesn't seem to have any effect on it. So what do we do? Do we then review the California Court of Appeal decision de novo, or do we review it with deference? He stole my question. It's a good one. Please answer that. And make believe Judge Smith asked you the question. I think that was a great question. What do we do? Well, I think this court should review it with deference. Under the ADPA, the controlling law, Santabello and Mabry, two Supreme Court cases which say there's a breach of the contract. The state has the choice whether to go with specific performance or rescission. But, no, you're telling me why this Court of Appeal was right under any standard of review. And you may be correct. I'm asking a different question. When the procedural bar is removed voluntarily by the state, is it different than if it had come into court to show cause and prejudice to get rid of the procedural bar? If we did that, then we wouldn't give deference to the Court of Appeal. Why do we give deference now because you removed the procedural bar? Well, the ADPA says very clearly that deference belongs to any state decision on the merits, and this 1994 decision is clearly a decision on the merits. But it's the less reasoned decision. Here's the dilemma, and I think you understand it because you're experienced. If you had not waived the procedural bar, if you had asserted it, the district court would have said, is there cause and is there prejudice? And if it found cause and prejudice, it would then not be bound by the prior state decision. It could make a de novo review of it. Here, instead of asserting the procedural bar, you quite correctly, for the reasons you pointed out, waived it. If the procedural bar is waived, do we look at this case as if cause and prejudice had been shown, or do we look at it as if there was never a procedural bar in the first place? That's the question. That's the question. That's the question, right? You could argue that the Court of Appeal was right under any standard of review, and you may be correct. I'm just asking what our standard of review should be. Well, Marina B. Fisher says the later procedural bar doesn't affect under the ADPA earlier merits decision. That's a decision that's reasoned. It's still entitled to deference. You could have a decision from a state court which denies something both on the merits and both on the procedural bar at the same time. In that case, either one could be a valid approach. In this case... So I can either take de novo or deference? In this case, the procedural bar is timeliness and timely, and the 1994 decision was obviously the claim was brought timely at that time. It just doesn't seem logical to apply a timeliness bar to a claim that already been brought timely a decade earlier. And in some sense to argue that 10 years later this procedural bar is unfair to a petitioner. I would also point out that even if there is de novo review, the two Ninth Circuit cases, Buckley and Brown, which are most like this case, are very different in the fact there's no withdrawal plea. Both of those cases, there's no issue about anticipatory breach because in both of those cases, the defendants didn't bring their claim until after the 7 1⁄2 years when they expected or claimed they should have been released. I could have an anticipatory breach. Are you saying that if she'd waited until after the 7 1⁄2 years, there could have been no breach? The argument the petitioner has been making is that there's an anticipatory breach. Yeah, but you can't keep this promise. Well, the state's original argument was, let's wait until 7 1⁄2 years, she doesn't have a claim yet because it's not a habeas claim, she's not looking to get released, right? It wasn't the original argument, this claim isn't ripe yet. Right, because... Because what? That's what I don't understand. Can you say at the same time, she can't get released, but it's anticipatory? I mean, you say it's a matter of law, she couldn't get released then. She couldn't even have her parole hearing then. And you tell her that, and you assert that's the law, but you won't let her say that you're not going to keep the promise? Well, in this case, she bases her argument on breach on a summary that she got from a parole officer... But isn't she correct? It isn't the state's position that there is going to be a breach. As a matter of law, there will be a breach. Certainly, and the summary that she was given was based on her sentence of 15 years to life, standard sentence for second degree murder. But this is why you're not asserting a procedural bar, right? I mean, you do think her claim was timely because it was brought later. You can't argue that it was untimely because it was brought too early and that it was untimely because it was brought too late, can you? When should she have brought this claim? Well, if you go by Buckley and Brown, she should have waited until seven and a half years in one day and said, breach, this is my agreement, they should have let me out in seven and a half years. Okay, she did it when? I believe it was, by the time, well, she originally brought it in 86 and then she brought it again in 89. Right, because in 86 the state said it's too early, didn't it? Yes. So she waited until the seven and a half years passed and she brought it. I'm having trouble with the argument. I didn't bring it away for the whole seven and a half either. Yeah, she waited a little longer and brought it again. Waited until 86. So I'm just not sure where this point takes us. I'm not sure where it takes us. I mean, I understand the Sanabella arguments pretty well. I just don't understand, you know, to me, looking at this record, and I may be wrong, I'm not sure anybody acted in bad faith anywhere along the way. The state made a mistake in its original promise. The California court tried to fix it by undoing it. I'm not sure that the other side, that the defendant didn't take a stubborn position and not go back to the original deal because she thought the deal was that she would get out. We just have, this case sort of screams out to me that it's a mess. That's why I'm trying to. Well, that's partly due to the inadequacy of the record. I mean, I would be concerned about if after, before there was any prejudice to the state, she first said, you know, I'm going to withdraw my plea with good legal cause, and then she thought about it and said, you know, that's a dumb thing to do. I could spend the rest of my life in prison where otherwise I'll get out much earlier. I've already given the consideration. I'm going to go back and tell the judge that was a terrible mistake. I'll take the original deal. I'll take the original deal as I see it. Then it would seem to me the hearing could be an obligation for the court and the state, everybody to try to get this straightened out. You know, suppose we say the original deal is not what you think it is, but here's the original deal. You get seven as we can do it under the law. Here's the best we can do for you under the original deal. Now do you want to withdraw it? And I assume the state would have said yes. But was there really an exploration as there should be in any kind of plea agreement? It's got to be clear that the person who's doing something this drastic understands what's going on, what her alternatives are. Yet we don't really know what happened at the hearing when she moved to reinstate a plea agreement. You know, I would feel a lot more comfortable with the case if I knew what happened there. And that's one of the things that makes this an awkward case is we don't know when she said, I want to reinstate what I think is my plea agreement, whether anyone ever told her, well, this is not what you can get. What you can get is the legal aspect of the original plea agreement, and it's that choice you're going to have to make, that or a trial. Did the court ever explain any of that to her? Well, I think once the plea was withdrawn, the spirit court simply said the plea is withdrawn. It doesn't get reinstated. Obviously she had the opportunity through counsel. Why doesn't it get reinstated if she comes and says, look, I withdrew it. It was a terrible mistake. I'd like to have it reinstated. Why would the court and the state not say okay if it were really the original deal? Why not? Well, I think the question now is whether or not that was a violation of the Constitution. Right.  Did the judge say arbitrarily, ha-ha, too bad, you could have had that deal, but once you said I don't want it, that's it. We're going to try you for first-degree murder. Is that what the judge said, or was there a reason? Did he say, look, here are your alternatives. Here's what I'm going to rule against you. Here's what you're doing. Well, to be fair to the state, the motion that Ms. Fox filed was I want specific performance of the original deal, which is that I get out after seven and a half years, but I have two alternatives. The other one is that you can try me for second-degree murder. Not that I will plead to it, but you can try me for second-degree murder. So I'm not sure on this record that the defendant expressed any willingness to go back to the original deal. I'm not saying he did. The defendant said I would like the original deal as I see it. And was there any – she obviously wanted something, and maybe she couldn't get it all. But was there ever a hearing at which there was a discussion of what her alternatives were and what it would mean if she did this, or somebody say to her, we can give you part of the original deal. You're going to have to agree to the lifetime parole. You're going to have to agree that it's going to be 10 years. And then if you want that original deal, yes. I mean, it's just uncomfortable not knowing why her plea was rejected, whether there was any – She didn't offer one. She didn't offer one. No, she didn't offer one. She said, I want my original sentence. And the judge – what she said was – we know what she said. The problem is we don't know what wasn't said. We don't know whether anybody explained to her what the problems were, what she could get, what she couldn't. Do you still want to reinstate that original sentence under these circumstances? All right. So where would we – the question that I guess we should ask is where can we look in the record, if anywhere, to find the answers to these questions? I see her motion, and her motion doesn't seek to plead guilty again. Her motion seeks either to be released after seven and a half years or to go to trial only on second-degree murder. So, you know, that – but that's in the record, and I see the State's response. The question is, is there any place else in the record that I can look to find out what happened at – you know, at the – after the plea was negated by the Court of Appeals and you went back to square one? Is those the only places I can look? Your Honor, obviously the plea was withdrawn in 1990. Right. The trial was in 1992. There probably were some discussions. Yeah, and off the record stuff I don't care about. I'm just looking. Is there anywhere else in the record I can get a hint as to what happened between 1990 and 1992, other than on the papers that deal with her motion to – for specific performance? And your response, the State's response? The only place I can think of would be where D.A. Montrose is testifying at the 1999 evidentiary hearing. But I will not state that it's in there because I don't recall if it's in there. And the 1999 evidentiary hearing – and I've got the transcript here – what findings were made by the district court – by the trial court, Superior Court? Well, Superior Court as to the specific performance? Yeah, just focus on that. Actually read into the record a lot of the California Court of Appeals' decision and then agreed with it. And said – basically the court says, we don't have a specific performance issue anymore because you sought to get out of the agreement. Yes. Okay. That's what I thought, too. I was looking through that, but I couldn't – Add to the ER 241, as I remember. Let me ask you this question because, I mean, I'm bothered by what I think when Ted Hurwitz says it's the opposite. But didn't the state court say when Fox pleaded guilty in 1984, she got what she bargained for, a sentence of 15 years to life, with a promise of parole in seven and one-half years? Was the state court wrong when it said that? The state court only had before – and it says in its opinion – only had before the sentencing transcript. It didn't have before the – That's right. It was in the sentencing transcript, as I suggested earlier, that they made a promise to her that she would get out in seven and a half years. Are you reading from the Court of Appeals' transcript? Yeah. What it says is there, when a plaintiff pleaded guilty in 1984, she got what she bargained for, a sentence of 15 to life, with a promise of parole eligibility. No, no. With a promise of parole. I don't know. My – Well, I've got a word with it in the quotes I have. Yeah. In the Court of Appeals' opinion, it says eligibility. It says eligibility in the record. Okay. Then I withdraw that. I have a quote here, which must be erroneous. But we're still – we're still going back to this. Listen, I want to – and we've kept you up here a long time, but I want to make sure we've got the history of this right. I've got it right here. And they can talk to each other. We all agree that the state promised – made a promise it couldn't keep, which is that you'll be eligible for parole after seven and a half years. We all agree that the court – that plea agreement was set aside at the request of Ms. Fox, the Court of Appeals focusing only on the lack of knowing consent to a probation term, right? Yes. It was actually Superior Court that made that decision. And the Court of Appeals affirmed. Superior Court makes it. I'm sorry. And then – and then she goes back and says, okay, I'm now out of this deal that I signed. Here's the deal I want. I want specific performance of this deal. Was the deal she sought specific performance of was I get out of jail after seven and a half years. So I – right? Yes, I believe she said – That's the one deal she carried. I now have the decision, and let me read it again for those who think there's eligibility in it. When Fox pled guilty in 1984 – this is the Court of Appeals decision. Which one? 1996? It's the one of March 30, 1994. Right. 1994. When Fox pled guilty in 1984, she got what she bargained for, a sentence of 15 years to life with a promise of parole in seven and one-half years. Now, it may be clear to some people that there was absolutely no promise, but it wasn't to the Court of Appeals. Your Honor, I think that can be explained in the fact that the Court of Appeals was focused on the withdrawal of the plea issue and never had to reach the terms of the contract for the plea agreement. Well, it may not have done it brilliantly, as some courts of appeals don't, but it made a statement that would show, certainly, that it's not so clear to everyone that she didn't get a promise of parole after seven and a half years. The Court of Appeals thought she did, which is another part that makes this a very messy case. Well, the ultimate conclusion of the California Court of Appeals that the petition was non-trial-specific relief is a reasonable application of Sanibel and Mabry. Could it have given her specific relief? In 1994? Could it have ordered that she... If you read the deal, as Judge Reinhart says, they read it, does that mean that they could have enforced the deal in 1994 and said that you will be paroled? I believe there's the Garcia case, the state case and some other cases that say you can't enforce the pre-bargain that's not... Well, you can't require that somebody be paroled. It's not within the power of the court, right? It's up to the parole board. So if you're then faced with an agreement that can't be enforced, and put aside the probation tail for a second, what does the state court do? In other words, the state court in 1994 says, look, having granted Foxx's motion to vacate her guilty plea, everybody went back to the status quo ante and there's no agreement for the trial court to enforce. Is that all they could have done? Is that all the trial courts could have done? Well, certainly that's what the California Court of Appeals decided. Is that all they could have done under the Constitution of the United States? In fact, if you make a deal with somebody that he's going to do 20 things to benefit the state, and if you do that, we're going to let you out in five years, the man does all those 20 things, or the woman, completely performs under what they call a contract, completely performs, and then the state says, oh, well, now you've performed, now we're going to tell you that we can't do what we promised you to do. You're going to have to serve the rest of your life, even though we told you you'd get out in two years. Do you think there's no remedy for that under the Constitution? Well, Your Honor, once Petitioner withdrew the plea and convinced us... No, no, no, no, not that he withdrew the plea. Judge Hurwitz said to you, what could you have done? The only remedy to vacate the plea, that's the question. After you've already given all the consideration and you've made a deal with the state and they say, we're going to let you out if you do these things, and then you say to them, no, we can't let you out under our state law. And you say, well, under state law you can't do it. I'm saying to you, under federal law, is that due process? Is that not a violation of the Constitution, just because the state says we made a promise that we can't keep? Well, it's almost irrelevant, because once we get to 1994... Well, as I said, maybe it's irrelevant. Sometimes we ask irrelevant questions and we ask hypothetical questions because we try to find out what the law really is. And is the law that the state is without power to keep its promise simply because it didn't understand the state law when it made it and the other person has performed under the contract? Well, it's not clear the petitioner has fully performed under the contract. No, I asked you a hypothetical question. What the power is when the state makes an illegal promise and the other party performs the promise. Is the state without power to... And if the state is without power under state law, does the Constitution require the state to comply with its promise rather than keep a party in, under my hypothetical, in jail for the rest of its life, or execute them? They say we won't enforce capital punishment. And then somebody comes along and says, you don't have any right to say that. So let me focus on this. Let me give you the smallest part of the question. It's really the same one I've been asking all along. Everybody agrees that the state made a promise it couldn't keep. Is the only remedy for that to vacate the plea agreement or is there some other remedy that a court could impose that gives relief? And I'm not buying the other side's characterization of what the promise was. I'm just asking, you know, let's put...  We can talk about that later. The Court of Appeals didn't make any factual findings, and there's no finding in the record of that. But whatever the agreement is, put it aside for a second. Does a court have the power at this point to order enforcement of a variant of the agreement that's legal, or is the only power of the court to vacate the plea? Easy legal question posed in this case, posed on the facts of this case, not a hypothetical. On the facts of this case, the plea was withdrawn. The Superior Court denied the motions to reinstate the plea. Right. And at that point, I think Petitioner had a duty to litigate that. To take that issue up. To take that issue up on a writ to that California Supreme Court and possibly into the federal courts. But didn't she raise that on direct appeal of her conviction? She did, after a trial in the Supreme Court. To the California Court of Appeal, and they turned her down. Correct. And now she's in federal court making that claim. She wants to enforce the plea agreement. We don't know what it is, but she wants to enforce it. Can we enforce it anymore, or is it gone forever because it was withdrawn? The state's position is that it's gone forever. We've taken advantage of you. Thank you. Well, we've been here for quite a while. It's an interesting argument. I'm not sure we know all the answers. Interesting. Thank you. Thank you, Your Honor. Well, as you can see, we've run over somewhat. If you have something, we'll give you some time also. But not 14 minutes and 58 seconds. Just a couple of points. Not one minute. Let's start from beginning and run, and we'll see how it goes. Just a couple of points. I think that on the standard of review question, there is no case that they've cited that would justify looking through a procedural bar. There's no case that's like that that they've cited or that I'm aware of. So I think that the review should be de novo. But even if it's de novo, now we know more than when we started. We now know that your client on appeal not only said, I want to get my plea vacated, but when she went back to the superior court, said, I want specific performance of a deal that gets me out in seven and a half years. And if not, I want to be able to try the case for only second-degree murder. But she never said, and the record never says, but if you can't do that, just give me the best you can. I'll do either of those things or I'll try it. Now, how do we give her specific performance of something that she didn't seek specific performance of? I think you give her the specific performance because that's the only remedy for the state's breach. If the state had abided by the original agreement, whether it's their interpretation of it. The state could not have abided by it. We all agree the state could not have abided by the original agreement. No, I think it depends on the Constitution. You think the state, no. Okay, well, Judge Reinhart has a broader view of the state's power than I do. But let's assume the state could not make her eligible for parole in seven and a half years. State law said ten. The state could not promise, as the judge told her during the original guilty plea colloquy, that the Board of Parole would parole her. So assume the state makes a promise that it can't keep. That's my premise, and your opponent agrees with me. They made the promise they couldn't keep. One option is to vacate the agreement and tell the parties to start over. Another option, Judge Reinhart suggests, perhaps, is to enforce as much of it as we can. Well, even enforce it all. I'm sorry to the, when the person makes the motion, say, I want it as I understand it. The judge can say, no, look, you can't have that. That's not the only option. You can either have your original plea as I understand it back, or you can go to trial. You have three choices. But the judge doesn't offer plea, right? So the question I was focusing on is this. We have this lifetime probation tale out there. Nobody claims the state ever promised her she wouldn't have one. Your client claims, I just didn't know there would be one, and therefore I didn't enter it into the agreement intelligently. So what do we do with that? That was an alternative argument that was made along with, in conjunction with... But she was very clear in her declarations that it was in conjunction with, in other words... I have a different, if we do the Reinhart solution here and fashion something that you would like, don't you still get lifetime probation? If the original agreement were enforced and she had the lifetime probation, yes, she would... I mean, you have to get lifetime probation. Nobody ever promised you you wouldn't, right? Let's assume that what the court said is all that it can do, which I'm not willing to assume. But assume that is the case. Assume that you say, look, I want my plea as it is, specific performance of my plea. Or I guess I have to go to trial if I can't get my plea. There's a third course, is what I'm suggesting, is that the court can say, look... The court can say, we don't have the legal authority to give you a plea as you think the plea is. Whether or not you were promised that, you can't get it. But you could get this. Yes, you've got the lifetime parole, and you're going to get a parole hearing after 10 years. Now, that's the only plea agreement that would be a valid one. Now, do you want that, or do you want to go to trial? That's the question I asked you before, so... There's a lot of assumptions layered into that, but yes, she would want that. She did not want to go to trial. That's repeated in the record. She would, under those circumstances, where you're saying constitutionally the state cannot abide by its promises, an assumption I disagree with. But under that circumstance, as presented, she would choose the best... Okay, is that not something she sought below, though, is it? It's not. Okay. Okay. Thank you. Thank you.
judges: Reinhardt, Smith, Hurwitz